JUAN ARIAS RAMIREZ,

Plaintiff,

v.

Case No.

Domino's Pizza Supply Chain (DPZ),
Scott Knapp Colorado Suply Chain Director
(Official Capacity)
                    Defendant.

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

24 JUN 21 AM 9: 41

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES the plaintiff Juan Arias Ramirez, Pro Se, and complains about defendants as follows:

1.    This is an employment discrimination action (Disparate Treatment) under race and national origin brought under Title VII of the Civil Rights Act of 1964, Race under 42 U.S.C.,42 U.S.C. 1981 (" Section 1981") and Retaliation under the Fair Labor Standards Act 28 U.S.C, under Title VII of the Civil Rights Act of 1964, under the protected classes of national origin, race and escalation of sexual harassment complaints and retaliation under 42 U.S.C. 1981 (" Section 1981").These claims are againt DOMINOS Pizza LLC (DPZ) as an employer and Scott Knapp, Director, as  individual company officer as allowed by cited applicable U.S.C. **PLAINTIFF HEREBY REQUEST A JURY TRIAL.**

## JURISDICTION

2.    The court has jurisdiction over plaintiff's retaliation claim pursuant to 28 U.S.C 1337 and FLSA and Authority to grant declaratory relief under the FLSA pursuant to 28 U.S.C. 221 et seq

3.    At all material times relevant to this action, Defendants were employers (one of the same) by the FLSA, Title VII and Section 1981 standard as defined by 29 U.S.C. by 42 U.S.C and 28 U.S.C.

4.     This Court has further explained, post-*Reeves,* that "[t]he relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs." *Rivera v. City and County of Denver,* 365 F.3d 912, 924-25 (10th Cir. 2004)

4.     Title VII matter jurisdiction is conferred on this Court by 28 U.S.C. § 1331 as this complaint raises questions of federal law. All relevant events in employment relationship happened at 10252 E 51st Ave city of Denver, Colorado.

1

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.      The plaintiff filed a dual charge of Discrimination and Retaliation with the Colorado Civil Rights Division and the U.S. Equal Employment Opportunity Commission on 6/30/23. The charge sheet included counts of disparate treatment and retaliation under race, sex and national origin. The charge sheet also includes a count of retaliation under sexual harassment protection of Title VII.

6.      On March 28th, 2024, the plaintiff received a Letter of Right to Sue from the EEOC which endorses this complaint in Federal Court. The letter asserts that the plaintiff has 90 days to pursue his stated claims in Federal Court, deadline being June 25th, 2024. This filling meets that deadline (EXHIBIT A).

## PARTIES

7.      Juan Arias Ramirez: Plaintiff, at all times in the events here cited was male, born in Dominican Republic and of Afro-Hispanic race. Plaintiff holds Bachelor's in Commerce, OSHA 30 certified and Certified Associate Human Resources Professional. Bilingual, Spanish speaker. First hired by Dominos LLC as Warehouse manager for the Missouri Supply chain center December of 2021. Transferred to Colorado Supply Chain Center in October 2022.  Held dual titles of Center Administrator (Paymaster) and Customer Service Manager. Held safety coordinator responsibilities from December 2022 to March 2021.

8.      Scott Knapp: Defendant, Male, Caucasian, over 55 years old. American National Origin. Hired as Director of Operations in Dember 2022. At all times of employment with Dominos, plaintiff's immediate supervisor. At all times, ultimate decision maker in Colorado Supply Chain center for all matters to include quality, finances and employment matters. As an employee with hiring, firing authority for all liability matters under FSLA, Title VII and Section 1981, Knapp and Dominos LLC are one of the same "Employer". Sophisticated discriminator.

9.      DOMINOS PIZZA LLC. (DPZ): Operator of Colorado Supply Chain Center with more than 120 employees. The company is registered with the Colorado Secretary of state and maintains a valid business license to operate in the state. The company is headquartered in Michigan and boast over 10,000 employees nationally. The company is split into 3 divisions: distribution of ingredients, manufacturing of ingredients and parlor stores.

## LIABILITY

10.     DOMINOS PIZZA LLC (DPZ): Is subject to Title VII, Section 1981 and FLSA. In the complaint hereby filed, DOMINOS holds single responsibility under Title VII and Joint responsibility with Knapp under Section 1981 and FLSA.

11.     DOMINOS PIZZA LLC provided Knapp and its human resources staff with training under the areas of investigation and/of liabilities under Title VII, Section 1981 and FLSA. That is to say, Defendant and human resources staff are capable of discerning discrimination and/ or

2

retaliation under the codes here cited regardless of circumstances being explicit or implicit. Hence, Defendant and human resources staff are sophisticated discriminators.

12.    At all times DOMINOS PIZZA LLC considers SCC Director, ultimate supervisor of all employee's center, corrective actions have to be endorsed by him or her. Knapp had hiring and firing responsibilities over all people managers at the center and individual contributors in the front office, accounts payable/receivable clerk and customer service representatives.

## MEETING EMPLOYER'S EXPECTATIONS

13. At no point during his employment, the plaintiff received a corrective action, coaching form or any derogatory information about his life as a DOMINOS LLC employee.

14. The plaintiff received 50,000 rewards points from Director Betty Rayfield while being a Warehouse Manager in Missouri for his efforts to reduce safety violations and improvement of safety culture. Plaintiff also set up a local audit program that resulted on the Missouri SSC passing the annual Dominos Global Standard audit for 2022, which they had failed for 3 years straight.

15.    Plaintiff was hired by Director David Poe, Knapp predecessor, as Customer Service Manager, beating Sarah Heath. A local internal candidate. Plaintiff employment at the Colorado SCC lasted 196 days, from October 17th 2022 to May 1st 2023. Plaintiff argues that that all of his complaints meet the criteria of protected activities because they were done in good faith and within the 300 days of the scope requested by the United States Federal Codes mentioned under the aforementioned **JURISDICTION** Tab.

16.    Plaintiff received a maxed-out merit increase of 4% and was praised in his performance review for meeting expectations, going above and beyond what was expected and challenging the staff in the Colorado SCC to improve their performance.

17.    At the time the plaintiff joined the Colorado SSC, it ranks 2nd lowest in the region in safety and highest in customer complaints in 2021 All department manager whom achieved the low ranking in 2021 were still in place during plaintiff's employment in the Colorado SCC.

18.    All people managers in Missouri were required obtain a class E endorsement for their driver's license. This would allow for them to drive trucks loaded with ingredients and delivered them to stores when needed in order to avoid losing sales at store level. Once in Colorado, plaintiff continued the same practice.

19.    Plaintiff's responsibilities as Customer Service managers entailed assuring that stores received their ordered ingredients and maintain satisfactory relationships with store staff and leadership.

20.    Plaintiff would have to work 7 days a week when only scheduled for 5; continued missing ingredients in shipments from warehouse department and missed deliveries by the transportation

team (drivers) forced the plaintiff to make deliveries himself when no other resources were available, going as far as Alamosa CO. Plaintiff will also have to field continued complaints from stores regarding services every day of the week.

21.    As a native Spanish speaker, plaintiff was able to coach, educate and set expectations for Spanish speaking employees through the supply chain center in order to maintain equitable treatment. The departments of Production and Warehouse held multiple non-English speakers of Spanish speaking national origins. After plaintiff's arrival Spanish was widely spoken with Director Poe's endorsement.

## WITNESSES

22.    Dani Rich: Transportation department manager during plaintiff employment. Previous customer service manager, in charge of training plaintiff upon his arrival. Caucasian, Female. U.S. born.

23.    Tiffany Ross: Warehouse department manager during plaintiff employment. Caucasian, Female, US born. Homosexual orientation. Knew Knapp before he was hired to the Director role and had a direct report relationship with him.

23.    David Walsh: Maintenance department manager during plaintiff employment. Canadian born, Caucasian over 50 years old.

24.    Mourad Deraaoui: Production Manager during plaintiff's employment. Moroccan born; Brown skinned Male over 50 years old.

25.    Ben Carson: Assistant production manager. Married, Canadian born, mid 30s, Caucasian. Directly reports to Tiffany Ross.

26.    Aubrey Rose: African American, early 20s, U.S, Born. Directly reports to Ben Carson.

27.    Taylor Wright: Inventory supervisor at times of plaintiff employment, early 40s, US born. Directly reports to Ben Carson and Tiffany Ross.

28.    Sarah Heath: Assistant Transportation Manager always during plaintiff's employment. Female, US born, Caucasian. Given customer service manager department role post plaintiff's firing under suspicious circumstance of racial preferences by Knapp (Matter of fact #86).

29.    Jenni Serrano: Female, Mid 20s, Salvadorian national origin, warehouse department employee. Reported harassment by a coworker to plaintiff in January of 2023. Plaintiff escalated complaint to Knapp. Dominos investigation registry shows no investigation (EXHIBIT B)

30.    Elizabeth Mourato: Female, warehouse employee, Mexican national origin, brown skinned under 40. On March 9th, 2023. Reported wage theft for herself and behalf of 5 other employees, harassment, and retaliation to plaintiff by warehouse people managers. Plaintiff escalated

4

complaints to Knapp on same day, March 9th. Mourato, thereafter reported sexual harassment to plaintiff by direct supervisor Taylor Wright. Plaintiff subsequently escalated the complaint to Knapp. Dominos investigation registry shows no investigation (EXHIBIT B)

31.     Brazille Smith: Female, African American, U.S. born. Warehouse employee. Reported harassment by a coworker to plaintiff. Plaintiff reported the events to Knapp on Mid-March. Dominos investigation registry shows no investigation (EXHIBIT B)

32.     Sadiq El ghazal: Male, Moroccan born, brown skinned and over 40. Maintenance tech. Was refused hepatitis B vaccine after cleaning blood from an injury to a second employee by Caucasian safety coordinator in December 2022.

33.     Michael Brown: Male, Production operator, African American over 60 years old. Was refused hepatitis B vaccine after cleaning blood from an injury to a second employee by Caucasian safety coordinator in December 2022.

34.     Edward Ashley: African American, Mid 20s, US born. Had timecard manipulated without his permission by Dani Rich and Tiffany Ross in order to show wage theft in early December 2022. Ashley was fired thereafter.

35.     Cassandra Clopton: African American, Mid 30s, US born. Customer service representative/payroll clerk. Reported to plaintiff. Written up for misuse of funds in a scheme with Dani Rich's endorsement. Rich didn't face corrective action. Terminated due to attendance faults.

36.     Elisha Zuniga: female, US born, Mexican heritage. Transferred from transportation department (Dani Rich Dept) to plaintiff. Repeated attendance faults with poor performance. Continuously asked plaintiff for attention; advise with her son, dating and reducing responsibilities in her job description along with childcare accommodation outside of proper documented channels. As of the last week of April, plaintiff had made both Knapp and Weston aware of Zuniga's problematic behavior. For instance, In the week of April 21st, while plaintiff was on PTO. Zuniga reached out to plaintiff asking to work from home. Plaintiff declined the request and referred Zuniga to Weston for review. Zuniga wrote on Microsoft Teams that "she didn't want to fuck with Weston and that she was asking him". On Sunday, April 30th, Plaintiff declined to be alone with Zuniga un the supply chain center at 3:00 am. Zuniga lashed out at the plaintiff and said would report him to Heinz for sexually harassing her and left the facility and the shift. Plaintiff was fired May 1st. As late as April 28th, Knapp and Heinz had blocked plaintiff from exercising Dominos's LLC policy to Zuniga's absences and tardiness. Plaintiff made both Heinz and Knapp that treating Zuniga differently than Clopton was disparate treatment based on race.

37.     Monserrat Aguirre: US born, Mexican heritage, Brown Skinned female. Warehouse employee. Suffered injury when a stack of trays about 8 Ft fell on her, back and upper shoulder. The incident cause hematomas and difficulty of movement. Tiffany Ross reported the incident as

a near miss in order to reduce company liability. A Caucasian people manager in the warehouse department, has made a quick turn with trays on the pallet before the trays tilted and fell on Aguirre. Plaintiff reported Ross's misclassification and reinvestigated the safety incident.

38.      DeJave Jimmerson: African American, mid 20s, US born. In early March 2023, complained to Plaintiff that he had not been paid his signing or performance bonus after starting his employment. Plaintiff audited payments for the last 12 months from March 2022 and 2023. Plaintiff realized that under Ross and Rich multiple African American, Hispanics and non-English speakers had not been paid their bonuses. Plaintiff rectified the situation and increase the warehouse payroll for over $10,000 on a single week. In contrast, Drivers in Dani Rich's transportation, a mostly Caucasian crew was up to date on bonuses for being hired and also 6-month performance.

39.      Michelle Garcia: Mid 20s, Female, US born. Mexican heritage. Reported sexual harassment to plaintiff on April 23ʳᵈ, 2023. Plaintiff escalated the complaint to Knapp and Ross on the same day. Knapp changed the reporting party in the investigation to Tiffany Ross for the complaint. Plaintiff was fired May 1ˢᵗ, a mere 7 days after his report of sexual harassment. Therefore, severing the prong of causality in a retaliation claim in bad faith (EXHIBIT B & C)

40.      Judy Ramirez: Female, mid 20s, Mexican born. Direct report to plaintiff as customer service representative from November 2022 until end of plaintiff employment on May 1ˢᵗ, 2023. Per Ramirez conversations with the plaintiff. While reporting to Dani Rich on the same role of customer service representative, Rich never provided Ramirez with software password or training to perform her role. She was assigned domestic tasks such as cleaning the female bathroom and breakroom. Received a faulty computer without audio or microphone to perform her role. An impossible task. Plaintiff ordered her a new computer, provided training in both English and Spanish and stopped the practice of her performing domestic duties. Dominos had a cleaning company visit the facility every day for domestic duties. The contractors cleaned at night. Ramirez had been transferred to the customer service department from the warehouse, tiffany Ross's department. After being hit in the head by a falling metal pole while heavily pregnant before plaintiff arrival. Dominos staff did not record her injury in the safety record keeping system, Intelex. The staff didn't inform Ramirez of her right to request medical attention either.

41.      Jessica Weston: Us Born, African American, mid 30s. Senior manager for the center. Number 2 in the management structure after Knapp. Directly responsible for production and Transportation departments and continuous improvement. Knapp was directly responsible for customer service and maintenance department.

42.      Jen Heinz: Female, Caucasian mid-30s. Regional human resources team member. Handling matters in the west region to include Arizona and Colorado. Based in Arizona. Sophisticated discriminator.

6

43.    Marcos Gomez: Male, long haul driver, Mexican born, mid 30s. His route included driving to Utah. Complained to plaintiff on January 2023, that his route was being delayed on purpose by Dani Rich on the basis of race. That is to say, his truck would be loaded hours before he is given the manifest clearing him to leave Denver. He said this was a hazard because winter conditions in the highway to Utah. Plaintiff escalated the complaint to senior manager Jess Weston.

44.    DOMINOS SUPPLY CHAIN MANAGENT MEMBER: Plaintiff received a call on April 26th of 2023. He was told by a member of management of the supply chain that he would be fired that week in a scheme by Knapp and Heinz. Plaintiff was told such was the purpose of Heins visit to the center on April 26th. The plaintiff was told that he was making Caucasian department managers, Heinz and Knapp uncomfortable over his complains on how minority employees were being treated. That is to say, complains plaintiff had escalated regarding, wage theft, retaliation, sexual harassment, underreporting of injuries, nonpayment of bonuses to minority employees, disparate treatment of employees based on race. Plaintiff was also told during the call that Heinz and Knapp" were expecting an angry black man reaction out of him'.

45.    Tonya Prince: Dominos Human resources Business Partner, responsible for the training of human resources team members and management team members on investigations, discrimination, retaliation under Title VII, FLSA and Section 1981.

### MATTERS OF FACT

46.    Under Director David Poe, plaintiff uncovered and foiled a unauthorized payment scheme by Dani Rich and Cassandra Clopton in October 2022. In the event, Clopton pick and storage an order from the warehouse. She would receive $50 per order. This appropriation was not approved by Director Poe and was not endorsed by a Dominos' change of pay benefits form. After being told to discontinue the practice, Clopton did it once again. As payroll clerk she added her own pay and Rich as paymaster certified it. Only Clopton, African American, received a level III corrective action, a suspension. Dani Rich did not receive a reprimand for appropriating funds without Director Poe's permission. At all times of plaintiff employment, the only scanner available in the Supply was Canon iR-ADV C5840 PDF

47.    In November 2022, Plaintiff realize that Rich and Clopton had a second scheme going; that is to say. Clopton would be trained "under the table" to be hired as assistant Transportation manager as the employee holding that role, Tremaine Stewart transition into becoming a Driver. Plaintiff reported the scheme to Weston and Poe. They agreed with him that allowing Rich and Clopton to continue the scheme would violate Title VII and DOMINOS equal opportunity policy. That is to say, an internal employee would be receiving training for a role at the same time that a requisition is open for the same role and interviews are ongoing. This would place the internal candidate in an advantageous role compared to any other applicant of different protected class such as Race, Color, Religion, and national origin.

7

48.      In November 2022, the plaintiff realized through customer complaints that the warehouse department had been sending expired product "Cinnamon powder" to stores. The warehouse, Tiffany Ross's department had not been rotating stock. Plaintiff reported the situation to Ross, the quality team representative and the director. After noticing that the location still had not been rotated. The plaintiff, a former warehouse manager in the Dominos network, rotated the goods themselves and set an example and expectation for warehouse personnel that he "would not cover for their mistakes". He also made it clear that he was not beholden to his peers but to Dominos Policies and partner store expectations.

49.      When newly arrived at the Colorado SCC, plaintiff was under Dani Rich for training. Dani Rich, when adding the plaintiff to the outlook Customer Service group, assigned plaintiff brown, just like the plaintiff's skin color. Plaintiff reported the event as racist to Jess Weston and Director Poe.

50.      In the first 6 weeks in the supply chain center, Dani Rich would continuously keep track of the plaintiff's whereabouts. That is to say if plaintiff worked in an office or conference room she would question him on his preferred location. Plaintiff again reported this to Poe and Weston under the believe that Rich as a peer had not legitimate business purpose to" be hunting after him".

51.      In November 2022, as plaintiff started to set strict standards around himself. Dani Rich started going to multiple team members to get written statements as to how the plaintiff's changes were creating a hostile work environment and were of a sexist and racist nature. The complaints were found unfounded by Director Poe. Dani Rich attempted to stablish an "English only rule" for the supply chain center, which was deemed discriminatory by Director Poe.

52.      On November 23, 2022, Dani Rich was presented with a Level II written corrective action under the policy of Discrimination, Harassment (including Sexual Harassment), or Retaliation for her treatment of plaintiff by Director David Poe. Rich's first reprimand in her 9 years of employment.

53.      Plaintiff instituted a section of roll call in the morning meeting in which the customer service department would communicate the amount of errors from the previous day by warehouse department, which products had the most credit requests and also how much was the cost to the supply chain center. The amounts went as high as US 20,000.00 in credit requests per weekend and up to $5,000 per average Monday through Friday. That is to say, Tiffany Ross and the warehouse staff would have to hear every day, how their mistakes translated to cost for the supply chain center. After plaintiff was fired on May 1st, Knapp discontinued the practice.

54.      In the last week of November 2022, plaintiff realized that  two team members of African American and Middle eastern race had been blocked by the Caucasian safety coordinator from receiving a Hepatitis B that they were entitled to received; The had come in contact with blood, not their own when cleaning after an employee suffered an injury. The plaintiff reported the attempt to withhold based on race to Director Poe and Jess Weston. Caucasian safety coordinator

did not receive a reprimand for his willful attempt to withhold a life saving vaccine from two minority employees for the sake of not creating a record of liability for the supply chain center.

55.    In November 2022, the plaintiff noticed that Tiffany Ross and Dani Rich were changing the punch times of employees without the employee's knowledge or authorization. In that scheme, an African American employee Edward Ashley, had clocked in at a certain time and had not been located by Ross. Ross and Rich changed Ashley's entry punch time to when she first made contact with him. Thereafter, Ashley was terminated for stealing time. However, Ashley's time since it was modified didn't record any wage theft. Plaintiff reported the modifications to Weston and Poe and they let Rich and Ross know that modifying employee's time without their consent or knowledge was deviation that would not be accepted.

56.    In early November, 2022. The plaintiff realized that employees under the management of Tiffany Ross and Dani Rich would perform work off the clock by which they would not receive payment; That is to say, an hourly employee would leave earlier than scheduled and drop off some ingredient missing from a store on their way home. Sarah Heath, Elisha Zuniga, Cassandra Clopton and Ben Carson would participate in this activity. After being informed of such, Director Poe and jess Weston Discontinued the practice. After plaintiff was fired on May 1st, 2023. Director Knapp reinstated the practice.

57.    In December 2022. Cassandra Clopton was terminated due to attendance policy violations. Clopton, female and African America. The termination was reviewed and endorsed by Jen Heinz and Knap whom at the time was receiving compensation as sole individual holding the title of Director of Operations for the Colorado supply chain center. They both endorsed the termination on a current and approved controlled document for corrective action. At the time of plaintiff's termination, 1st 2022, Knapp and Heinze submitted a forged form, not a control document which read that a team member did not have to be made aware of a previous corrective action for a termination to be valid (EXHIBIT D)

58.     Knapp was known, as late as the week of April 2023, to ask Sarah Heath about the tattoos she had on her body. That is to say, Knapp was hired in December and as weather thawed out and Sarah heath would wear more revealing clothing. He would ask her about her  tattoos. Sara is about 24-25 and Knapp is over 55. In contrast Knapp quoted the professional conduct policy and sexual harassment policy to fire the plaintiff when his own actions could be interpreted as unprofessional and sexual harassment based on the age gap as well as the power imbalance between the two.

59.    As late as the week of March 28th 2023, Knapp was known to walk up to team members whom where conversating in Spanish and say to them " No Hablo" Spanish for "Don't Speak it". Forcing the team members to speak English. By doing so, Knapp stablish a de facto "English only rule" in the workplace. Therefore, severing employee's ties to their race as well as an element of their national origin. Knapp was known to have done so to employees such as Marcos Gomes, Judith Ramirez and Elizabeth Mourato. Knapp endorsed and held Dani Rich's intent for an English only rule in the work location, which former director Poe had deemed discriminatory.

9

Plaintiff reported the "English only rule" to Jen Heinz and Jess Weston and continued to use both languages in the workplace; English and Spanish. Knapp's attempts to stablish an English only rule without a legitimate business purpose, taint him as a discriminatory fact finder and decision maker.

60.    After Knapp joined the Colorado Supply chain center, complaints of disparate treatment and retaliation based on race and national origin, through employee survey, multiplied year over year. His first full year was 2023 compared to complaints in 2022.

61.    In February 2023, a Hispanic woman of Salvadorian heritage, Jenny Serrano, approached the plaintiff and complained that a coworker. Has keeping track of her movements in the facility, checking on her breaks and giving her unwanted attention. Plaintiff typed the complaint scanned her statement and sent to warehouse manager Tiffany Ross and Scott Knapp.

62.    Knapp asked plaintiff if he was aware that Jenny though she could report issues to him instead of her manager. Plaintiff told Knapp, that she could report a complaint to whomever she wanted. Knapp then asked plaintiff to not document complaints and to forward the employee to their manager. Knapp nor Ross documented the employee's concerns.

63.    On February 22nd, 2022. Plaintiff reported to Heinz and Knapp that he overheard a Warehouse Caucasian People manager, Ben Carson, saying that if he Weston, an African American could have a Marcus Garvey flag in her office. He should be allowed to bring a confederate Flag into work. The same day, Plaintiff reported that Carson was also known to refer to African American employees as "Monkeys". Carson had been overheard by an African American employee, Aubrey Rose, whom reported it to the plaintiff.

64.    On February 23rd, two Mexican born females reported to the plaintiff that they had overheard Carson wonder out loud. "why should he interview a Mexican candidate and a black candidate when both of them would do the same work of a single person'. Plaintiff escalated that claim to Heinz and Knapp. The Confederate Flag has been known to be associated to white supremacist groups as reported by the Southern Poverty Law Center.

65.    Heinz and Knapp found the claims against Carson unsubstantiated because he told them. That he was Canadian and  the confederate flag didn't mean anything to him. Hence, Knapp and Heinz prioritized the Caucasian accused, national origin above 4 different statements from non-Caucasian employees.

66.    On February 27th, 2022. A non English speaking employee, Jose Ardon Pineda. Reported to plaintiff that he had gotten hurt at work, was presenting shoulder pain and wanted medical attention. Jose had been referred to plaintiff by another Spanish speaking employee, Judy Ramirez. Plaintiff followed Dominos Safety policy and took the employee to Concentra. Knapp and Ross told the plaintiff that he should not have provided care to Jose because since he didn't

10

speak English, he could have been sent home on PTO for the day. Plaintiff told them both that he followed what the policy said and would do it again if it happened.

67.    On March 9th, 5 different members of the warehouse inventory team came to the plaintiff. The group included Elizabeth Mourato. They told the plaintiff that time was being shaved off their time by warehouse management. That is to say, Mourato had been tracking her hours and when she questioned her manager was told that the fixes were necessary to reduce overtime. Mourato also reported retaliation against Jenny Serrano for complaining about harassment a few weeks earlier. Plaintiff Gathered their statements and forward them to Ross, Knapp and Weston. He also gave Heinz a heads up on the situation by Microsoft teams.

All of those employees called Heinz individually the same day to complain about harassment, wage theft and retaliation. Heinz told plaintiff to not document the complaints and to let Ross handle the situation. Plaintiff told Heinz that it was too late and that the statements had already been emailed. In discovery with the Colorado Civil rights division, the record showed that an investigation never took place.

68.    On March 20th, Judy Ramirez reported to plaintiff that African American and Hispanic employees in the warehouse department were not receiving their expected Sign on bonus or 6-month performance bonus. Plaintiff audited the records and realized Tiffany Ross and Dani Rich had not been paying the bonuses to employees. However, had been diligent paying the Caucasian drivers that reported to Dani Rich in the transportation department. Plaintiff escalated the complaint to Knapp as possible wage theft and rectified the situation. In a single 2 week period the warehouse department had to pay about Us 10,000 in arrears wages to minority employees.

69.    As manager of the onboarding of employees to the center, the plaintiff reported to Knapp on the week of February 20th , that Tiffany Ross was scheduling new employees to perform actual work before the orientation process was completed in violation of company policy. She was having team members perform work without even having their tax forms filled out.

70.    On the week of March 20th, Elizabeth Mourato reported to plaintiff that she was being sexually harassed by her direct manager, Taylor Wright. That is too say that Taylor had asked her to spend time with him outside the facility as man and woman. Elizabeth reported that she couldn't because she was married. She said Taylor demeanor toward her changed after her rejection. Plaintiff reported the complaint to Knapp and sat him and Mourato in the conference room so she can tell him her view of the situation.

71.    On the first week of April 2023, An African American warehouse employee called Brazille Smith reported to plaintiff that a coworker was showing animosity over having to report to her. She told plaintiff did not feel safe working with that employee at early hours of the day when little people traffic was available. Plaintiff reported the concerns to Tiffany Ross and Scott Knapp.

11

72.    On April 9th, a female employee, Elisha Zuniga reported to the plaintiff that a African American people manager Brian Hampton, had been giving her unwanted attention; coming over to her cubicle in the other wing of the building to charge his phone on her desk outlet. He would ask her about who she was dating and ask plaintiff to stop it. Plaintiff reported it to Tiffany Ross and let Brian know Zuniga was not receptive to his attention. In an email to Knapp and Heinz, on April 21st, Ross confirmed the plaintiff had escalated the report to her. April 9th was a Sunday and Knapp was off.

73.    On April 23rd, a female Hispanic employee, Michelle Garcia reported to plaintiff through text message that she was being sexually harassed by a coworker who had threaten violence. Plaintiff escalated the complaint to Weston, Tiffany Ross and Scott Knapp. Knapp and Heinz changed the name of the reporting party to Tiffany Ross instead of the plaintiff in order to eliminate casualty and proximity in a retaliation claim. Plaintiff was terminated 7 days later, on May 1st, 2023.

74.    Plaintiff took 2 weeks off from April 10th to April 24th. But was in constant communication with the Supply chain center over the store complaints of service by warehouse and Driver team. Plaintiff also had to process the payroll for the supply chain center, because his designated backup, Weston's rights were not up to date. Dani Rich refused to help Weston, African American.

75.    Upon Plaintiff return on April 24th, Zuniga approached him saying there was an error on her payroll for the last 2 weeks and needed 26 hours added to her payroll. Plaintiff emailed Knapp asking if Zuniga's allegations were true. Knapp came to the plaintiff office and told him to take it easy on her because she had problems making rent and was about to be evicted. Plaintiff made Knapp aware that "such was not his problem and that he had provided her with the numbers for the Nonprofit partners foundation'. Plaintiff also told Knapp that treating Zuniga differently than her African American comparator Cassandra Clopton was disparate treatment based on race. Knapp move his head affirmatively and went on his way.

76.    On April 28th, Zuniga asked the plaintiff to leave early because she had scheduled pictures with her kids. Plaintiff denied the request because he was off and the other customer service representative had been on shift for more than 8 hours. Zuniga left anyway. Plaintiff had to cancel his day off and show up to run the department. Plaintiff told Heinz and Weston that he would provide Zuniga with a corrective action for her repeated absences. Heinz said that "HR would not support it because plaintiff wasn't trying to "feel Zuniga Seen" and that she was a single mom with money problems. Plaintiff told Heinz she would only say that because she has never lead a department and that if Zuniga didn't feel seen was because she was never at work.

Plaintiff reminded Heinz that when African American comparator Clopton got fired for missing days, she never asked how many kids Clopton had to take care of before she was fired. Plaintiff reminded Heinz that treating Zuniga and Clopton differently for same offence was disparate treatment because of race. He also told Heinz that the early hours of April 28th, an SAP malfunction delayed operations for about 7 hours and plaintiff "Didn't have to care for Zuniga picture date or time manager or money management'.

77.     Knapp had been made aware of Zuniga's absences and block plaintiff from giving her a corrective action over her money problems. Plaintiff would remind Knapp that treating her different than her comparator Clopton would be Disparate treatment on the basis of race.

78.     On April 30th, Plaintiff reported to Heinz that a Caucasian people manager, David Walsh had told Jess Weston, African American. Whom is married to a person of native American heritage that "Sexual abuses suffered by indigenous children in Canada were OK because the First nation's people were paid off. Plaintiff was fired May 1st and Dominos did not investigate.

79.     In March of 2024, a local minority owned snow removal company threaten to sue the supply chain center because Walsh had contracted them, had them working for months and had not provided payment. Plaintiff had to get involved and expedite payment with the corporate procurement office.

80.     Through their joint employment, Heinz and Knapp rated the plaintiff fitness to do his role on how he related to Caucasian people managers with discriminatory animus. In a conversation in the week of March 7th, Knapp asked the plaintiff to take it easy on Dani Rich because she reminded him of his granddaughter. That is to say, Knapp preferred role for the plaintiff, an African American male Born in Dominican Republic, was to be subjected in servitude to two Caucasian, blonde females born in the United States. Plaintiff complained to Knapp in mid-march that Ross, Walsh and Rich were challenging the use of an open office on the basis of race.

81.     When Jess Weston told Knapp that a Caucasian people manager, Ben Carson was keeping track of her movements in the supply chain center; documenting her whereabouts and movements through her day and purposely moving to the opposite side of the building, to which one where he worked, and stare at her for his lunch break. Knapp told her not to worry about it because he wasn't dangerous.

82.     In March of 2023, when Dani Rich flunked the global transportation audit for the center, Knapp did not produce a reprimand or force her to create a corrective action plan. A common consequence of such failure.

83. When Jess Weston directed Dani Rich to terminate an employee in her department. Rich refused and slammed the conference room door on her way out and the door to her own office

13

once inside. Knapp refused to issue a corrective action for that behavior but accused the plaintiff of breaking the professional conduct policy when terminating him on May 1st. Knapp changed the reporting structure so that Rich would report to him directly instead of Weston in order to shield Rich from accountability.

84. In March of 2023, 2 drivers communicated through the communication app, "group me". Driver 1 asked what he was supposed to do if he had extra ingredients on his last store. Driver 3 told him to just leave it on the last store. Plaintiff reported this to Knapp and told him doing that creates a cash loss to the center and that Rich needed to get that under control. Knapp told the plaintiff to not document the miss shipments and errors from the warehouse and the drivers.

85. After terminating the plaintiff, Knapp told the Missouri management team that the plaintiff had been terminated for sexual harassment. To which Director Rayfield answered that was hard to believe because that didn't sound like the plaintiff.

86. After terminating plaintiff, Knapp held sham minority interviews while allowing for his preferred candidate Sarah Heath (referred to in Matter of Fact 58) to shadow the assigned department manager Dani Rich. That is to say Knapp arranged for Heath to interact with customer stores, observe processes, interact with employees as department manager while "interviewing candidates for the role of Customer Service Manager.

87. Knapp referred Sarah Heath to the talent acquisition manager on May 10th. That manager deemed her unqualified for the role according to the records submitted to the Colorado Civil rights division. Knapp still gave her the role. In the midst of the interview process both Knapp and Heinz knew that Sarah Heath was fucking Ben Carson, a married coworker. Knapp and Heinz still allow for Heath to get the promotion while using the professional conduct policy to fire the plaintiff.

88. At the time of his termination, May 1st. Judy Ramirez was the back up administrator for the supply chain center would start training that week. After Plaintiff was fired, Administrator rights reverted to Dani Rich. Neither Dani Rich, Knapp or Heinz ensured Ramirez, Mexican born female received the adequate training to become proficient of her role, contrary to Sara Heath receiving training for the customer service manager role before she was presented and accepted an offer letter for the role.

88. In the same week the plaintiff was fired May 1st, Knapp endorsed a corrective action against Elizabeth Mourato and Judith Ramirez, both Mexican born. Both corrective actions were based on attendance while he had been blocking the plaintiff from using the attendance policy againt American born Zuniga. Both Ramirez and Mourato had escalated protected activities to the plaintiff. One of them, Ramirez, was in midst of interactive process for FMLA and had well documented the care of her children and use of medication as cause of attendance delays.

89. In early February, while assuming safety coordinator responsibilities, plaintiff reported to the Corporate safety team that David Walsh was assigning maintenance technicians to work

14

inside of silo without proper confine spaces safeguards. He also reported that warehouse management didn't have any training records for employees driving machinery such as forklifts. Both OSHA violations. In March 8th, 2023, the plaintiff conducted a presentation on his safety vision for the supply chain center, placed a glass house in one slide and he told the management team that to improve, they had to be open with the corporate office to get a new reality of how far behind the Colorado supply chain center was. After the presentation Knapp told the plaintiff that had he known how much he was communicating with the corporate office " he would have stopped it real quick'. Plaintiff took that as a threat.

## TERMINATION

90.     Plaintiff was terminated on May 1st. About 5:00 pm, Knapp came into plaintiff office and asked him to join him at his. Once there, Human resources representative Jen Heinz was on teleconference on the big screen. Knapp left arm was shaking and he told plaintiff that Dominos was terminating his services. Plaintiff asked. Why was he being terminated? Knapp said that because of some comments. Heinz said that "they were acting according to the handbook". Heinz told plaintiff that she was aware he used his personal phone for work, she told the plaintiff he was to not have any contact with anyone in the supply chain center network and to refer all communications to Knapp. Plaintiff gathered some of his belongings and was perved walked by Knapp out of the building.

91.     On early May 2nd, Knapp had all of the furniture and the plaintiff belongings removed from his office and displayed in the common area. They were displayed there for over 10 days as a chilling reminder of how he handled complaints under Title VII, FLSA and Section 1981 of USC 42. Director Rayfield from Missouri communicated with plaintiff in the early morning of may 2nd. Asking if plaintiff was ok? She told plaintiff that Knapp had sent a network wide email asking for a substitute for the plaintiff. On the same day, Dani Rich changed her title on the communication app "group me" from Transportation manager to the plaintiff's title, center administrator.

92    After being fired on May 1st, Plaintiff sent a Colorado Labor Department Form 22-234. The form asks an employer for the reason for an employee separation. The center received the form on May 2nd at about 9:00 am. About 1:00 pm, plaintiff started receiving calls from Jen Heinz asking to speak to him because she had questions to ask him. Just the day before Heinz had told plaintiff he was to not have any contact with anyone in the supply chain. In the more an 1 ½ year working with Dominos, plaintiff had never seen a termination such as his. Since the plaintiff was terminated May 1st, he was no longer receiving a salary from the defendant, he didn't answer Heinz's calls. In the reason for termination, Defendant quoted "not participating in an investigation" as cause for termination (EXHIBIT E). the completed form was return to the plaintiff by Jen Heinz on May 9th

93.     On May 2nd , Knapp and Heinz obtained access to plaintiff software computer and server profile. On May 3rd, Knapp received a certified letter from the plaintiff announcing his intent to sue (EXHIBIT F). Dominos still allow for Heinz and Knap to maintain access to the plaintiff's

computer and server profile, allowing for Knapp to review, examine eliminate evidence gathered by the plaintiff against the parties hereby accused.

94.     On May 9th, the plaintiff received a termination form by email from Knapp and Heinz. The form was not sign, the plaintiff returned it and ask for the form to be sign because someone was responsible for his termination. Knapp signed it and return it. The form was not a control document in circulation, the form said that the plaintiff had received a coaching on November of 2022. The form also said that the accused employee didn't have to be told or provide a signature before the coaching was recorded. The control document in circulation for all of 2022 and 2023 did not denote such secretive provisions. Both Knapp and Heinz new of the current control document in circulation because they used it in Cassandra Clopton termination (EXHIBIT D)

95.     On the week of May 9th, the plaintiff made Domino's In House Counsel, Allison Lloyd, aware that he still had belongings in the supply chain center and asked for her help in the return. Lloyd said had been told plaintiff didn't have any property left at the center. The plaintiff then sent a picture of his belongings to Lloyd; Legal note pads, papers and regular office supplies sprung out in the common area. The belongings were returned to the plaintiff a few days later.

**BAD FAITH INVESTIGATION UNDER HIGHLY SUSPICIOUS CIRCUMSTANCES**

96.     Plaintiff was not told by Knapp or Heinz why he was being terminated on May 1st. It wasn't until the Colorado Civil rights Division requested documents that he got to see the arguments against maintaining his livelihood through Dominos. Dominos cited violations Not Participating in an investigation, Violation under the Discrimination, retaliation and Harassment policy and violation to the professional conduct policy.

97.     Defendants claimed that had received 8 different reports and statements but only submitted 4 statements to the Colorado Division of Civil Rights. One of those statements was attributed to Brian Hampton. The statement was neither signed or dated so it can't be authenticated as Hampton's (EXHIBIT G). The statement was scanned to Knapp on April 12th but plaintiff was never questioned or informed of being the subject of an investigation.  That statement read that "He had approached Zuniga and told her that "She looked good because she did look good". Both Knapp and Heinz were aware that Zuniga had accused Brian Hampton of harassment.

97B.    A second statement resulted from an interview by Jen Heinz of Judy Ramirez. There Ramirez explains that Plaintiff never had any sexual remarks or actions toward her or anything that could be considered sexual harassment. The interview took place on May 5th. Plaintiff was fired on May 1st. That document was created by a paralegal named Sewell according to the data origin of the document.

97C.    A 3rd statement by Tiffany Ross who said was told by plaintiff that Dani Rich "looked so good in jeans that he wanted to eat her like a chicken wing". An incredibly racist troupe of Men of African race lusting after white women and chicken. It was under Tiffany Ross's leadership

16

that Ben Carson felt comfortable enough to call employees of African American heritage monkeys. The statement says the conversation took place on May 26th. However, it was dated May 1st and the data origin of the document says was created on August 18th. More than 90 days after the plaintiff's termination.

97D.    A 4th statement by Elisha Zuniga, dated May 1st, naming an employee called Michelle Garcia as victim of sexual harassment by the plaintiff. Dominos and Knapp never interviewed Garcia after the exculpatory results of Judith Ramirez interview. Zuniga had lashed out against plaintiff on April 30th when he refused to be alone with her at 3:00 am in the supply chain center. Plaintiff avoided being alone with Zuniga and chose to support her remotely because Zuniga had money problems, seemed emotionally unstable, was seeking constant attention from plaintiff and was performing poorly. Plaintiff thought that if he was alone with Zuniga at 3:00 am in the morning, she could accuse him of sexual assault or harassment and make her money problems disappear by suing the company. Plaintiff made Knapp and Heinz aware of his believes in an email on April 30th. Plaintiff offered to work from home and asked for Zuniga to be investigated because she was behaving erratically.

98.    The day Heinz visited the supply chain center, April 26th, Knapp ordered her to start 4 different investigations against plaintiff under the discrimination, retaliation, and harassment policy. In contract when 4 different employees accused white people manager Ben Carson under the same policy, Knapp and Heinz balled up all allegations into a single investigation, meaning making it easier to dismiss Carson's misconduct allegations. Heinz and Knapp did not inform plaintiff of being part of an investigation until after he was terminated on May 1st. Knapp and Heinz papered the record against plaintiff, denying him the opportunity to provide enough evidence for a neutral decision maker to make a good faith decision on plaintiff's employment. A management member in the supply chain network called the plaintiff on April 26th and was told that he would be set up to be fired by Knapp with Heinz help. He was told he would be fired over the complains he had been making over how team members were being treated and that Heinz and Knapp expected an "Angry Black Man Reaction'.

99.    At the time of the plaintiff's termination, May 1st, he had no documentation uploaded to Dominos Document management system on his profile. Neither coaching or corrective actions. After he was terminated, Plaintiff asked Heinz through email, how could he obtain the evidence againt him by either submitting a form or his personnel file. Heinz refused tell the plaintiff who was responsible for ensuring chain of custody in the materials associated with his termination.

100.    On April 21st, while plaintiff was on PTO, Zuniga told him through Microsoft teams that there was a rumor going on that they were sleeping together. Plaintiff told Zuniga to report it. She told him that she had and also reported to Heinz who was spreading the rumor. Plaintiff scolded both Knapp and Heinz for not investigating the issue and allow for his name to be tainted. He also included Tiffany Ross to attest that Zuniga had reported harassment by Brian Hampton. After Ross said that she had reported the concern to Heinz, Heinz deleted her from the email thread telling the plaintiff that the situation wasn't any of Ross's business. Plaintiff added

Ross back to the email thread and told Heinz "that he didn't have anything to hide because he knew how to do his job in the light".

101.    After plaintiff was fired on May 1ˢᵗ and within the same week, Knapp approved Zuniga change of schedule to a favorable one that didn't include weekends and gave her $150.00 in rewards point. Knapp used the private mode to award the points, one which doesn't display the transaction. Zuniga display the payment on Facebook.

102.    In the week of April 23ʳᵈ after receiving multiple complaints from Production Manager, Mousaad Derawui that Tiffany Ross was Coding a sanitation employee who work in the warehouse as an employee from the production department in order to maintain her labor cost low. Plaintiff told both Knapp and Heinz that he would not be part of fudging numbers in the supply chain center to make it look better than what it was to the corporate office. Plaintiff told both Knapp and Heinz that Knapp was allowing dollars from the production budget (managed by a man of middle eastern background) to be charge in the benefit of a white manager, Tiffany Ross. Plaintiff told both of them that if they didn't fix the situation, he would not approve the payroll cycle of May 15ᵗʰ.

103.    In March 2023, when Tiffany Ross conducted 2 substandard workplace injury investigations that scored a 30% out of a possible 100%. The safety score for the plant in the region changed from first to last. Knapp refused to hold Ross accountable.

104.    In the third week of March 2023. When plaintiff witnessed Caucasian people manager, Brandon Wemyss syphoning a corrosive chemical with a warning of damaging to blood without any protective gear. Knapp refused to hold Wemyss accountable. Wemyss had raised a container of acid about 10 ft in the air with a forklift, had climbed on another drum of corrosive acid and placed a hose connection in the bottom outlet of the first container and guided that hose to the top outlet of the second container. He did so without protective equipment and disregard for his well-being and other coworkers.

105. On March 17ᵗʰ, Plaintiff complained to Knapp, Weston and Heinz that Dani Rich was still doing the same behaviors that merit her a corrective action under the discrimination, harassment and retaliation policy; That is to say, she was still tracking plaintiff's movements across the building, she was challenging the use by the plaintiff of a previously unused office, she was accusing the plaintiff to other employees of recording secret conversations. On April 21ˢᵗ, Heinz acknowledge receiving the complaint along with Weston and Knapp. The record submitted to the Colorado Civil rights division shows no action was taken to investigate plaintiff claims of harassment from Rich. Dani Rich is a person in the majority group in the national origin and race while the plaintiff if in a minority group.

106.    On April 21ˢᵗ, Plaintiff received an email from the Kronos time management system which read that" Dani Rich had approved his PTO request". Plaintiff again complaint to Knapp, Weston and Heinz by arguing that Rich was a departmental manager, a peer with no legitimate authority granted by the business to supervise the plaintiff. Only 2 people where above the

plaintiff in the organizational structure, Weston and Knapp. Plaintiff complained that he was being harassed by Rich and questioned "Why is this white woman allowed to hunt after me in the workplace". The record submitted to the Colorado Civil rights division shows no action was taken to investigate plaintiff claims of harassment from Rich. Plaintiff was fired 9 days later May 1st. all 3 actors, Knapp, Weston and Heinz knew that Rich had received a written reprimand over her treatment of plaintiff under the discrimination, harassment and retaliation policy under the previous director, David Poe.

107.    After filling a FOIA request with the Colorado Civil Rights Division, the plaintiff realized that on February 21st, 2024. Domino's in house counsel, Allison Lloyd, declared to the state that there was no record or report of the investigation that led to the plaintiff termination. Lloyd declared to the CCRD that they only had the 4 statements provided to the state of Colorado. That is to say that Dominos through Knapp and Heinz did not document any of the escalations of sexual harassment complaints, race discrimination, national origin discrimination, retaliation based on race, retaliation based on national origin or wage theft by the plaintiff.

108.    In the same FOIA request, Lloyd further declared that the decision to terminate the plaintiff took place on May 9th 2024. Dominos was informed of the plaintiff intention to file a lawsuit againt the company and Knapp on May 3rd.2024 under Title VII and Section 1981. Hence, Dominos Under Rule 37(e) of the Federal Rules of Civil Procedure (FCRP), has a duty to take "reasonable actions" to preserve all information relevant to a legal dispute.

## COUNT I

### DISPARATE TREATMENT UNDER TITLE VII-RACE

102.    All        descriptions        discussed        herein        along        with        #
37,49,50,54,55,57,59,60,63,64,65,66,67,68, 76,83, 86 AND 7.

## COUNT II

### DISPARATE TREATMENT UNDER TITLE VII-NATIONAL ORIGIN

103.    All descriptions discussed herein along with # 49,50,54,55,57,59,60,63,64,65,66,67,68, 76,83, 86 AND 7.

## COUNT III

### DISPARATE TREATMENT UNDER USC 42, SECTION 1981

104.    All descriptions discussed herein along with

46, 47 49,50,54,55,57,59,60,63,64,65,66,67,68, 76, 83,86 AND 7.

## COUNT IV

19

## RETALIATION UNDER TITLE VII-RACE

105.    All descriptions discussed herein along with

30 ,37,62,63,43,44,55,65,66,67,68,69,70,71,72,73,74, 75,76, 77,78.

## COUNT V

## RETALIATION UNDER USC 42, SECTION 1981

106.    All descriptions discussed herein along with

30 ,37,62,63,43,44,65,66,67,68,69,70,71,72,73,74, 75,76, 77,78.

## COUNT VI

## RETALIATION UNDER FAIR LABOR STANDARDS ACT

107.    All descriptions discussed herein along with

30,34,38, 67 AND 69

## COUNT VII

## RETALIATION UNDER TITLE VII-FOR ESCALATING SEXUAL HARASSMENT DISPUTES

108.    All descriptions discussed herein along with 36,39,44,58,61,70,71,73 AND 107

## PRAYER FOR RELIEF

109.    Plaintiff has attempted to obtain comparable employment as to what he had with Dominos as far as schedule, salary, benefits, and career progression but has not been able to obtain it. At the time of termination, plaintiff's yearly salary was US 88,000 along with 2 scheduled merit increases annually of 4% each. Knapp's discriminatory animus not only led to plaintiff's losing his employment. Knapp's intentional negligence when holding Caucasian people managers accountable let to them preserving their employment, receiving merit increases, promotions, achievements awards and performance bonuses. Plaintiff believes this cause for action entitles him to all equitable reliefs as the court see fits to include, compensatory and punitive damages, legal costs, front pay, back pay, emotional distress and judgment interests.

20

## COUNT VII

## RETALIATION UNDER TITLE VII-FOR ESCALATING SEXUAL HARASSMENT DISPUTES

108.    All descriptions discussed herein along with 36,39,44,58,61,70,71,73 AND 107

## PRAYER FOR RELIEF

109.    Plaintiff has attempted to obtain comparable employment as to what he had with Dominos as far as schedule, salary, benefits, and career progression but has not been able to obtain it. At the time of termination, plaintiff's yearly salary was US 88,000 along with 2 scheduled merit increases annually of 4% each. Knapp's discriminatory animus not only led to plaintiff's losing his employment. Knapp's intentional negligence when holding Caucasian people managers accountable let to them preserving their employment, receiving merit increases, promotions, achievements awards and performance bonuses. Plaintiff believes this cause for action entitles him to all equitable reliefs as the court see fits to include, compensatory and punitive damages, legal costs, front pay, back pay, emotional distress and judgment interests.

Respectfully Submitted

/S/ Juan Arias Ramirez
2345 Apt 6, Aurora
Colorado 80010
314-473-4906
Jarias115@gmail.com

20

# EXHIBIT
# A



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Phoenix District Office**
3300 North Central Avenue, Suite 690
Phoenix, AZ 85012
(602) 661-0041
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)
Issued On: 03/27/2024

**To:** Juan Arias Ramirez
2345 Emporia St Apt 6
Aurora, CO 80010

Juan Arias Ramirez v Domino's Pizza LLC
EEOC Charge No: 32A-2023-00712

EEOC Representative and email:    Robin Campbell

State, Local & Tribal Program Manager
robin.campbell@eeoc.gov

---

## DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC has adopted the findings of the state or local fair employment practices agency that investigated your charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.) Please retain this notice for your records.

On Behalf of the Commission:

Melinda Caraballo for
Rayford O. Irvin
Acting District Director

CC:
Micah Dawson
Fisher & Phillips
1125 17th St Ste 2400
Denver, CO 80202

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

**IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT**

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

**ATTORNEY REPRESENTATION**
For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm. In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

# EXHIBIT

# B

Gmail - Fw: ICL Kronos Complaints

 Gmail

juan arias ramirez <jarias115@gmail.com>

## Fw: ICL Kronos Complaints

1 message

**Juan Arias Ramirez (SCC - DC CusSer)** <Juan.AriasRamirez@dominos.com>        Mon, May 1, 2023 at 9:28 PM
To: "Juan.Arias²" <jarias115@gmail.com>

**From:** Juan Arias Ramirez (SCC - DC CusSer) <Juan.AriasRamirez@dominos.com>
**Sent:** Thursday, March 9, 2023 1:22 PM
**To:** Scott Knapp (SCC - DC Admin) <Scott.Knapp@dominos.com>; Jess Weston (SCC - DC Admin)
<Jess.Weston@dominos.com>
**Subject:** Re: ICL Kronos Complaints

Team,

Elizabeth emailed me these before and after time cards.

Get Outlook for iOS

**From:** Juan Arias Ramirez (SCC - DC CusSer)
**Sent:** Thursday, March 9, 2023 9:25:47 AM
**To:** Scott Knapp (SCC - DC Admin) <Scott.Knapp@dominos.com>; Jess Weston (SCC - DC Admin)
<Jess.Weston@dominos.com>
**Subject:** ICL Kronos Complaints

Team,

This morning, I told by the CSR staff that Elizabeth Mourato had been looking for me multiple times. I reached out to Elizabeth and had a conversation with her in the office. She said las Monday had complained to tiffany that punches on the timecards were being changed in order to save OT regardless of when TM punched in or out the shift. She said that supervisor Pablo Serrano had told an employee that he noticed he had OT and changed the timecard so the TM would have OT. She said the same time had happened to her before and in order to prove it her along with other TMs had taken pictures of their punch time and and later compared what the time clock showed at end of pay period. She said that the timecards showed a consistent difference and that it was wrong for management to take advantage off employees in that way. She said that she try talking to tiffany about the issue but that it wasn't addressed so she talked to me today. She said she felt got in trouble by talking to me about her disagreements with Taylor, her immediate supervisor, a few weeks back. She said thereafter, she was brought into the conference room with Taylor, Pablo and tiffany and told to only talk to them about departmental issues.  She felt should not be kept from reporting issues outside of her department because what she witnessed from her leaders did not lead her to trust them. She said that after Jenni Serrano spoke to me to complain about the department, the coworker she complained about, Juan Soto, went over to Jenni to tell her he was mad at her for complaining about him to management. Elizabeth said that her management should not have told Juan Soto who complained about his conduct. She said that interaction with Soto left Jenni even less able to trust her management. She said that after Jenni complained she received a write up. I asked Elizabeth to write a statement of the interaction and that I would follow up with upper management. I told Elizabeth that as a courtesy, she should inform her immediate management if she needed any type of assistance, but at the same time, we could not order her whom to talk to because her complaints may very well be protected activities.

Before I arrived in the morning, I received a team from Tonja saying that Taylor was asking about me. I texted Taylor, he asked for the contact information of the HR rep. I gave it to him through a screenshot. Once I got in, I was able to talk to him. Taylor detailed that he thought there were wage theft issues going on with his department. He said that multiple team members had noticed changes to their timecards, and he felt that they were not right. He said he himself noticed that

someone had added an hour to him timecard and that he had reported that to tiffany. He said clocked in at 8 one day but his time had been changed to 7. He said that worried him because he could be thought of as stealing time. He said that his team was worries about speaking out outside of warehouse because they had been told not to, but that he thinks they should be allowed to. He gave the screenshot I sent him of the HR rep to his team members so they could bring up their concerns. He said that beside the whom to speak out to. He was concerned that Jenni had been giving a write up after complaining about Juan Soto over attendance. He said that lots of people call off and is seemed like odd retaliation to him. He said he has seen lots of people miss a lot of time without getting a write up. He said was concerned about Pablo telling Jenni as he was giving her a write tup that he felt betrayed by her by her coming to me( Juan) to complain. He said thought his team's complaints were valid. He said didn't think there was a witness to the write up between Pablo and Jenni, but that it should have been him because he didn't think it was right to have both along; Jenni complained about Juan Soto. Pablo coached Juan Soto and Juan Soto found out Jenni was the one who complained. He said didn't seem right.  After I was done with the interviews, Elizabeth approached me to say that as she was writing a statement in my office, Pablo had come in to ask her what she was doing. She said that had called Taylor and then had looped in Pablo as to get their stories straight before there was an investigation. I have attached all the statements I received today. I think there should be an audit for the last 2 months as to how many times the timecards have been altered  for this TMs out of an abundance of caution. Taylor said TMs had been told they could clock in 15 minutes prior to their shift and that is what was being done. He said having their times adjusted from 11:45pm to 12:00 to save OT was wrong. He said we should do away with the 15 minute head start. I think we should move away from altering TMs timecards without written consent. And whenever we do, we should give a written coaching as to not  create the appearance of impropriety.



**Juan Arias Ramirez**

Manager- Customer Service

Colorado Supply Chain Center

Email: Juan.Ariasramirez@Dominos.com

Mobile: (314)-473-4906 | Time Zone: MST



Proprietary & Confidential | All Rights Reserved © 2021 Domino's Pizza LLC

**2 attachments**



**Image.jpeg**
509K

# WHEN Should You Conduct An Investigation?

- ## Misconduct Observed By Management

  - An employer may be obligated to conduct investigations in the absence of an employee complaint if the employer "knows or should have known" about the conduct. See 29 CFR § 1604.11(d) (2003)

  - Create policy requiring written complaint BUT BEWARE.

  - MUST act promptly.

  - MUST take action to solve problem.

  - Must start ASAP.



fisherphillips.com

# WHEN Should You Conduct An Investigation?

- **Misconduct Reported By Employees**

  - Encourage complainant to provide a thorough, accurate, legible written report, signed, dated and notarized.

  - Create policy requiring written complaint BUT BEWARE.

  - MUST act promptly.

  - MUST take action to solve problem.



fisherphillips.com

# EXHIBIT C

6/21/24, 7:04 AM    IMG_7098.jpeg



IMG_7116.jpeg

Done



# Tif Whs and 2 People

Change Name and Photo

call          video

**3 People**
Tif Whs, Jess, Scott

**Jess Weston**

**Scott**

**Tif Whs**

+    Add Contact

Show in Shared with You

# EXHIBIT
# D



# CORRECTIVE ACTION DOCUMENTATION FORM

(Please type or print clearly) Form rev 05/12/2022

**Team Member Information:**

| | |
|---|---|
| Team Member Name    Damon Jackson | Team Leader Name    Juan Arias |
| Team Member Position    WHS Loader | Team Leader Position    WHS Manager |
| Employee ID#    362864 | SCC and Department Name    MO SCC-WHS |

| | |
|---|---|
| Date and Time of Violation:<br>August 9, 2022 & August 11, 2022<br><br>Nature of Violation:<br>**Time Reporting and Validation( 2020 SCC Handbook Pg 90 & DO the Right thing Values (2020 SCC handbook Pg 8)** | ☐ Verbal Warning<br>☐ Written Warning<br>☐ Final Warning/ Suspension<br>☒ Separation<br><br>(Note: These steps are provided as guidelines and suggestions only and do not in any way affect or impact the "at-will" employment relationship) |

**Describe the Situation** (to be completed by Team Leader):

On August 9, 2022, Damon Jackson entered the MO SCC facility at 12:35 pm, he clocked in at 12:38 pm and turned around to leave the facility. He did not return until 1:35 pm, thereafter clocked out at 6:36pm. Damon did not informed Warehouse leadership team about his reason for leaving earlier than scheduled or when he would return. Damon has over-reported his hours of work for August 9, 2022, violating the company's policy for falsifying time. On August 11, 2022 Damon was suspended for pending investigation and refused to leave the center when asked to go home Team member stated to Warehouse Manager, Juan that he did not know what he was talking about because he was "a crazy ass nigger". Damon told Manager, Juan that he was "bound to find him in these streets" and would not leave the premises.

**Action Plan** (to be completed by Team Leader, may require input from Team Member):

Separation of employment effective 08/15/2022.

**Next Step** (to be completed by Team Leader):

Damon Jackson was suspended on 08/11/2022 and unprofessional conduct was displayed. Damon is being separated from Domino's effective 08/15/2022.

**Follow-up date if Applicable:**

| |
|---|
| **Team Member Comments:** *You have the right to submit a written statement explaining your position* should you disagree with any of the information contained above. If you need additional space, you can attach additional pages or provide additional information to your HR Representative. Maria Lopez : (346) 202- 9289 |

| | |
|---|---|
| Team Member Signature _____ | Date _____ |
| I acknowledge that I have received this notification and understand that my signature does not necessarily imply agreement with the events described. | |
| Team Leader Signature _____ | Date _____ |
| Director Signature _____ | Date _____ |

Distribution:  Original to personnel file, copy to Team Member, copy to Team Leader

 # CORRECTIVE ACTION DOCUMENTATION FORM
(Please Print Clearly)

## Team Member Information:

| | | | |
|---|---|---|---|
| Team Member Name | Juan Arias Ramirez | Team Leader Name | Scott Knapp |
| Team Member Position | CSR Manager | Team Leader Position | Director Colorado SCC |
| SCC | Colorado | Department Name | Customer Service |

| | |
|---|---|
| **Date and Time of Violation:**<br>9-May-23<br><br>**Type Violation:**<br>**Professional Conduct, Harassment-Free Workplace and Workplace Investigations** | ☐ Verbal Warning<br>(no Team Member signature required)<br>☐ Written Warning<br>☐ Final Warning/ Suspension<br>☒ **Termination**<br><br>(Note: These steps are provided as guidelines and suggestions only and do not in any way affect or impact the "at-will" employment relationship) |

**Describe the Situation** (to be completed by Team Leader):

Multiple team members at the Colorado SCC reported concerns to Human Resources regarding Juan's conduct. Juan was suspended on 5/1/23 pending the outcome of the investigation into these concerns. Human Resources reached out to Juan on 5/2, 5/3 and 5/4 by phone and text message and 5/4 by email to interview him regarding these concerns. Juan has failed to cooperate in the Company's investigation by not participating in an interview or providing a written statement. The investigation was conducted and resulted in a finding that Juan violated the professional conduct and harassment-free workplace policies. Colorado SCC leadership previously coached Juan on professional conduct expectations following an investigation in November 2022. In April 2022, Colorado SCC team members (including Juan) were asked to re-review and acknowledge the professional conduct policy. Juan also attended training on professional conduct and harassment in April 2022.

Domino's reserves the right to determine when a team member's behavior is unacceptable and when and what disciplinary action is necessary under a given circumstance. Team members are expected to be responsible, reasonable, considerate, and to conduct themselves in a professional, business-like manner while on the job. In addition, the Company prohibits sexual harassment. Sexual harassment includes, but is not limited to, unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature. Any team member who fails to cooperate with the Company's investigation will be subject to disciplinary action up to and including termination of employment in accordance with Company policy.

**Action Plan** (to be completed by Team Leader, may require input from Team Member):
NA

**Next Step** (to be completed by Team Leader):
Separation of employment effective immediately.

**Follow-up date:**
On-going

| |
|---|
| **Team Member Comments:** *You have the right to submit a written statement explaining your position should you disagree with any of the information contained above. If you need additional space, you can attach additional pages or provide additional information to your PeopleFirst Representative.* |

| | |
|---|---|
| Team Member Signature _____<br>(Signature acknowledges only that the Team Member has reviewed this form with the Team Leader. It does not imply agreement.) | Date _____ |
| Supervisor Signature _____ | Date _____ |
| Director Signature _____ | Date 5/09/2023 |

Distribution: Original to PeopleFirst, copy to Team Member, copy to Team Leader

# EXHIBIT

# E

**COLORADO**
Department of
Labor and Employment

## NOTICE OF POTENTIAL AVAILABILITY OF UNEMPLOYMENT INSURANCE BENEFITS

**ATTENTION EMPLOYER:** You are legally required to provide a form, in hard copy or electronic format, to an employee upon separation. Please complete the form using information that matches your employee payroll records.

**ATTENTION EMPLOYEE:** Below is information from your previous employer at the time of separation from employment. If you received $2,500 or more in payroll wages from any employer where taxes were withheld in the last 18 months, you may be eligible to file a claim for unemployment benefits. Before you file a claim, gather your income and related information, such as pay stubs and this form. You can file a claim by visiting the website at https://cdle.colorado.gov/unemployment or by calling the Unemployment Insurance Division at 303-318-9000 (Denver Metro) or 1-800-388-5515 (toll free).

| Employee Name:<br>Juan Arias Ramirez | Employee SSN (last four digits only)/ or Individual Taxpayer Identification Number (ITIN):<br>**1233** |
|---|---|
| Employee Address:<br>**2345 Emporia Street Apt. 6 Aurora, CO 80010** | |
| Employee Start Date of Employment:<br>**12/20/2021** | Employee Last Date Worked:<br>**5/1/2023** |
| Employee Year-to-Date Earnings:<br>**$28,324.61** | Earnings for the Last Week Worked:<br>**$340.00** |
| Employer Legal Business Name:<br>**Domino's Pizza LLC** | Federal Employer Identification Number (FEIN):<br>**383495003** |
| Employer Trade Name/Doing Business As Name (if applicable): | Employer Address:<br>30 Frank Lloyd Wright Dr.<br>P.O. Box 997<br>Ann Arbor, MI 48106-0997 |

Reason the employee separated from employment (Please select only one option and limit free-form responses to one sentence. If an unemployment claim is filed, the Division will reach out to both parties for additional information about the separation):

☐ Quit
Employee's reason for quit:_____

☐ Layoff

■ Discharge
Reason for discharge:__**Violation of Company Policy**_____

☐ Other:_____

# EXHIBIT
# F

May 2nd 2023

Dear CO DPZ Management:

This is a courtesy letter to inform you of the EEOC case number I started due to my termination on May 1st, 2023. I was told that complaints of several inappropriate comments led to my dismissal. I was not given a chance to provide a written statement. I was escorted out the building, told to not have contact with anyone in the Dominos network and to not take any work related electronics. The number is 541-2023-02600. My claims are of disparate treatment under Title VII for protected class sections of National Origen, Race, Sex and retaliation for assisting TMs with minority traits report their concerns about the treatment received to management. In a circumstance in your building, under the four walls you controlled, you though to have enough evidence to make me lose 104K of yearly income. I, humbly, now seek to weight that same evidence by neutral actors to see if your evidence and not discriminatory impetus and disparate treatment was the driver behind the damages I have suffered. To the people that meant so much to me within the network; Marie G, Ashley F, Betty R and David P, the pleasure has been all mine. To my last Director Scott Knapp, in our last meeting, I saw you tremble in both voice and body (right arm). As this process continues and we come upon discovery. I want you to know that I will match the investigative diligence you practiced with the concerns I brought to your attention to that you practice when those who share your race criticized me. I will match those actions to USC 42 section 1981, which allows for recovery of damages from individual actors within an organization when their action deprived individuals of enjoying the same rights of other US persons. I have enclosed a copy of DOL-800. Per **CO Rev Stat § 8-2-129 (2016),** **I am, humbly, requesting my employee record be sent to my home of record.** These is an incomplete list of my claims.

-I reported to management, possible wage theft affecting employees of Hispanics heritage. Investigation unknown-None suspended/none terminated.

-Reported to management the safety coordinator's attempt to withhold Hepatitis B vaccine to

 employees. Investigation unknown-None suspended/none terminated.

-Reported to management concerns of harassment by 4 different minority women to management-Investigation Unknown-None suspended/none terminated.

-Reported to management employee comment than a black and a Hispanics interviewee would do the work of a single employee. Investigation unknown-None suspended/none terminated.

-Reported to Management employee complaint of direct supervisor using the term "monkey" against African American employee. Investigation unknown-None suspended/none terminated.

-Corrected underreporting of injuries on minorities; events loosely reported as minor when employees had been seriously hurt.

-Arias was barred from using traditional corrective action toward employee when others of different race had been accountable to same criteria.

-Was barred from having active role in local HR, per job description, changing condition of employment.

-Reported white female peer's attempt to sabotage, my performance. investigation unknown-none suspended/none terminated.

-Reported comment by male white manager that native American abuses were ok because they were paid of. Unknown investigation. None suspended/None terminated.

-TM refers to another TM of different national origin as a BITCH. Management is informed. investigation unknown-none suspended/none terminated.

# EXHIBIT



and then the next day Juan came out to me and said I heard you was talking to my girlfriend and I said hold up its not like that and i not trying to be involved in any rumors or anything that can jeordize my job here for harassment and then it told my supervisor ben about it

Sunday April 9, 2023, I approach Alicia asked her is the anyway I made feel uncomfortable in any way because I see if rumors going on and I'm not trying to be involve in that because it not trying to lose my job over he say or she say and she said no you don't make me feel uncomfortable in anyway and I said thanks because I work with you and I don't you to feel uncomfortable and witness who I told about this situation was Ben and Tremaine the other supervison

# Document properties

## Description

| | |
|---|---|
| File name: | Tab 6 - Brian Hampton Statement.pdf |
| File size: | 103 KB |
| Title: | Not available |
| Author: | Not available |
| Subject: | Not available |
| Keywords: | Not available |
| Created on: | 4/12/2023, 11:31:26 AM |
| Modified on: | 8/18/2023, 5:37:27 PM |
| Creator: | Canon iR-ADV C5840 PDF |

## Advanced

| | |
|---|---|
| PDF producer: | Adobe PSL 1.3e for Canon |
| PDF version: | 1.6 |
| Location: | C:/Users/SAIRA LLC/OneDrive/Desktop/... |
| Page count: | 2 |
| Page size: | 11.33 × 14.67 in (portrait) |
| Fast web view: | No |

Close